**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**CIVIL ACTION NO. 11-261-HJW-JGW**

**LISA MAY EVANS**                                                    **PLAINTIFF**

**v.**

**D.E. FOXX & ASSOCIATES, INC.**                      **DEFENDANT**

**REPORT AND RECOMMENDATION**[1]

Pending are defendant's motion for summary judgment (Doc. 53) and plaintiff's sealed

motion for partial summary judgment (Doc. 55).  The presiding district judge has issued an order

referring the motions for the issuance of a report and recommendation.  Doc. 24.  After

examining the motions, the record and applicable law, I recommend that defendant's motion for

summary judgment be granted and plaintiff's motion for partial summary judgment be denied.

**I.  Factual and Procedural History**

Plaintiff Lisa May Evans is an African-American female who has been a licensed

attorney since 1994.  Plaintiff's deposition (doc. 51), p. 69.  In 2008, plaintiff contacted David

Foxx (Foxx), founder and Chief Executive Officer (CEO) of d.e. Foxx & Associates (the

Company) about providing either human resources (HR) consulting services or legal services to

the Company, *id.* at 74, which operated warehouses for clients.  Foxx's deposition (Doc. 58), p.

15-16.  Foxx and plaintiff initially discussed having plaintiff serve as both general counsel for

the Company and being the Company's Vice-President (VP) of HR.  Plaintiff's deposition (Doc.

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this report and
recommendation.

51), p. 153.  The company's previous Director of HR, a Caucasian male, had recently passed away and Foxx was "looking to replace the General Counsel."  Foxx affidavit (Doc. 53-1), §9, 11.

In February 2009, plaintiff met Foxx at his office, where Foxx offered plaintiff a position as VP of HR.  Plaintiff sought a salary of $175,000 per year.  Plaintiff's deposition, p. 87.  Foxx told plaintiff "that was out of line with the executive compensation structure and . . . he could pay me 125 [$125,000] and we could do a bonus of another 25 [$25,000] that would be guaranteed after the first year."  *Id.*  Plaintiff accepted Foxx's offer and became the Company's VP of HR in February 2009.

In November 2009, Foxx sent plaintiff an email which stated that she was "doing great" and was "everything [Foxx] thought that [plaintiff] would be" and she was "fully meeting [his] expectations."  Doc. 55, p. 24.  However, the same email asserted that Foxx "expect[ed] [plaintiff] to work on "[l]earning to collaborate . . . [g]etting organized . . . [and] [l]earning to delegate . . . ."  *Id.*

As is evident from the dose of criticism contained in the otherwise laudatory email, Foxx was not completely pleased with all of plaintiff's actions.  In his affidavit, Foxx stated that plaintiff "made unilateral decisions and often employed a totalitarian approach to those she supervised" and "was not setting a good example for employee behavior."  Doc. 53-1, p. 7.  Foxx also asserted that plaintiff "often had out of control emotional outbursts that would be laced with curse words in front of other employees that she supervised."  *Id.*  Indeed, at her deposition plaintiff admitted that she "rant[ed] and rave[d] in my office all the time.  As a matter of fact, Mr. Foxx had had our facilities people put additional sound proofing up in my office so

that I could go in my office and do exactly what he knew I did all the time when I was having issues, [which] was to go in my office and vent." Plaintiff's deposition (Doc. 51), p. 215.

Defendant also was concerned about plaintiff's violating the Company's spending policies. According to defendant, in order to keep track of expenditures the Company had a policy requiring an employee desiring to use a Company credit card to physically go to the accounting department and get the card. Affidavit of Teresa Smith Howard (Doc. 53-2), §10.[2] Plaintiff, however, "wrote down the credit card number and would often use the number to purchase items without actually getting the Company credit card from the Accounting Department." *Id.* at §11.

At her deposition, plaintiff denied knowing there was a credit card spending policy. Doc. 52, p. 253. However, plaintiff's denial appears to be a matter of semantics regarding whether there was a formal, written policy as plaintiff stated at her deposition that Foxx had instructed her that "if I needed the credit card, to ask Tom Booher for it." *Id.* Plaintiff then admitted that she had used the credit card without asking Booher for it by writing down the credit card numbers and later using those numbers to purchase items with the card. *Id.* at 254. Plaintiff's explanation was that she "was not told that the only time I could use the credit card was if I got the credit card from Tom Booher." *Id.*

---

[2]Plaintiff asserts that Howard, plaintiff's former administrative assistant, "had no spending or approval authority and therefore could not have had first-hand knowledge as to what policies existed relative to Defendant's credit card." Doc. 67, p. 8. However, even if it were assumed that Howard had no independent spending authority it would not logically mean that Howard could not have had personal knowledge of the Company's spending policies. Indeed, Howard's affidavit provides that its contents "are true and correct and based upon my own personal knowledge." Doc. 53-2, §1. The Court therefore refuses to give Howard's affidavit no consideration.

Defendant also states that plaintiff knowingly violated policy by splitting the costs associated with obtaining materials for a job fair.  Plaintiff had the independent authority to spend $1,000 from the HR budget; any purchases over $1,000 had to be approved by Foxx.  *Id.* at 256.  Without consulting Foxx, plaintiff instructed Howard to complete two separate purchase orders (each of which was under $1,000 but when combined totaled over $1,000), thereby eliminating the need to gain Foxx's approval.  Howard affidavit at §13, 15-16; Plaintiff's depo., p. 261-68.  Plaintiff "concedes that she violated company policy by splitting an invoice that was approximately Two Hundred Dollars ($200.00) above her One Thousand Dollar ($1,000.00) approval limit."  Doc. 67, p. 9.

In June 2010, an incident occurred when Foxx's wife came into a meeting and accused plaintiff, who was wearing a sleeveless shirt, of being in violation of the Company's wardrobe policy.  Plaintiff's depo, p. 206-209.[3]  Plaintiff became embarrassed and upset and went toward her office, cursing and ranting.  Other employees overheard plaintiff's outburst.  Doc. 58-1, p. 95-96.

Later in June 2010, plaintiff met with Foxx, who told plaintiff that he intended to reassign her from being VP of HR to being the Company's general counsel.  Plaintiff refused the reassignment, which defendant construed as a resignation.

---

[3]Though a copy of Foxx's wife's deposition does not appear to be in the record, defendant asserts in its response to plaintiff's motion for partial summary judgment that Foxx's wife denied at her deposition having entered a meeting to accuse plaintiff of being "out of uniform."  Instead, Foxx's wife purportedly averred that she privately asked plaintiff after the meeting concluded whether she (plaintiff) was dressed in accordance with the dress code.  Doc. 64, p. 11, n. 7.  The location where Foxx's wife accused plaintiff of being out of uniform is not material to resolving the motions at hand.

Plaintiff filed this action in April 2011. Plaintiff's twenty-two page complaint[4] contains causes of action for: racial discrimination under Title VII; racial discrimination under 42 U.S.C. §1981; racial discrimination under Ohio Revised Code (ORC) 4112.02 and 4112.99; violation of the Equal Pay Act; gender discrimination under ORC 4112.02 and 4112.99; gender discrimination under Title VII; Equal Pay Act retaliation; Title VII retaliation; retaliation under ORC 4112; and promissory estoppel.

## II. Analysis

### A. Standard of Review

Summary judgment is proper only if the facts on file with the court demonstrate that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party may discharge its burden by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party cannot rest on its pleadings,[5] but must identify

---

[4]Although she is now pro se, plaintiff had counsel at the time the complaint was filed.

[5]Plaintiff relies heavily upon the allegations in her complaint in both her motion for partial summary judgment and response to defendant's motion for summary judgment. Plaintiff's novel argument as to why she is permitted to rely upon her complaint is that she testified under oath at her deposition that she had reviewed and approved the allegations in her complaint so 28 U.S.C. §1746 allows her to now rely on the unverified allegations in her complaint. 28 U.S.C. §1746 provides in relevant part that "[w]herever . . . any matter is required or permitted to be supported . . . by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported . . . by the unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare . . . under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." However, plaintiff's deposition was conducted orally, not in written form. In addition, plaintiff did not sign either her complaint or the transcript of her deposition, nor does the deposition contain a written declaration in the form required by 28 U.S.C. §1746. In fact, at her deposition plaintiff did not even explicitly orally declare and adopt

specific facts that remain in dispute for the finder of fact at trial. *See id.* at 324. Although all inferences are drawn in favor of the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), the nonmoving party must present significant and probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether a genuine issue of material fact remains for a fact finder at trial. *Id.* at 249. The inquiry is whether the evidence presents a "sufficient disagreement to require submission [of the case] to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989), and to designate specific facts that are in dispute. *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-05. The standard of review does not change when both parties move for summary judgment, nor does the presence of cross-motions mean that summary judgment must be granted. *See, e.g., McKim v. NewMarket Technologies, Inc.*, 370 Fed.Appx. 600, 603 (6th Cir. 2010); *B.F. Goodrich Co. v. U.S. Filter*

---

all of the provisions of her complaint. Instead, plaintiff merely answered in the affirmative when asked if she had "approved the complaint as it was filed." Doc. 51, p. 115. Accordingly, plaintiff's unsurprising statement under oath at a deposition that she had approved the unsworn complaint filed by her former counsel is insufficient to permit plaintiff to rely on the allegations in that complaint.

*Corp.*, 245 F.3d 587, 592-93 (6th Cir. 2001).  Plaintiff's burden is not lessened by her current pro

se status.  *Viergutz v. Lucent Technologies, Inc.*, 375 Fed.Appx. 482, 485 (6th Cir. 2010)

("Viergutz's status as a pro se litigant does not alter his duty on a summary judgment motion.").

### B.  Promissory Estoppel

Plaintiff has withdrawn her promissory estoppel claim.  *See* Doc. 67, p. 1 ("Based upon

the evidence presented, Plaintiff hereby withdraws her claim for promissory estoppel . . . .").

The Court therefore should dismiss that claim as having been voluntarily withdrawn.

### C.  Race Discrimination Claims

#### 1.  Standard of Review

Plaintiff's complaint contains a claim for race discrimination under Title VII, a claim for

of race discrimination under 42 U.S.C. §1981 and a claim for race discrimination under ORC

4112.02 and 4112.99.[6]  Doc. 1, p. 14-16.  "To prove racial discrimination, a plaintiff may put

forth direct evidence of discrimination or present circumstantial evidence that permits an

inference of discrimination."[7]    *Watson*, 202 Fed.Appx. at 853.  Because plaintiff has not

---

[6]"A common framework governs race discrimination claims under Title VII and 42
U.S.C. §1981." *Berry v. City of Pontiac*, 269 Fed.Appx. 545, 548 (6th Cir. 2008).  Similarly,
"[t]he standards for proving racial discrimination are the same under Ohio and federal law
because Ohio applies the body of federal case law interpreting Title VII to determine if an
allegedly discriminatory practice violates its anti-discrimination statute." *Watson v. City of
Cleveland*, 202 Fed.Appx. 844, 853 (6th Cir. 2006).

[7]The fact that Foxx, plaintiff's immediate supervisor, is also African-American does not
absolutely bar plaintiff's race discrimination claim.  *See, e.g., Oncale v. Sundowner Offshore
Services, Inc.*, 523 U.S. 75, 78 (1998) ("in the related context of racial discrimination in the
workplace we have rejected any conclusive presumption that an employer will not discriminate
against members of his own race.").

presented direct evidence,[8] she "must create a presumption of unlawful discrimination and

challenge the defendants to rebut the presumption by legitimating their actions." *Watson*, 202

---

[8]"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). "Direct evidence generally requires unmistakable verbal assertions that the employee was treated adversely because of his race." *Wofford v. Middletown Tube Works, Inc.*, 67 Fed.Appx. 312, 315 (6th Cir. 2003). Plaintiff's argument notwithstanding, no such evidence has been presented to the Court.

Plaintiff contends that she presented direct evidence via her deposition testimony that Foxx desired to recruit and retain white employees due to his belief that large customers preferred dealing with white employees. Plaintiff also testified regarding Foxx's alleged refusal to permit an African-American regional manager to participate in a presentation to Procter and Gamble due to the regional manager's lack of articulation. The comments in question, however, are not direct evidence because they all require an inference to be made before a conclusion of racial discrimination could be reached. For example, Foxx's alleged comment about how customers preferred to deal with white employees does not establish that plaintiff was reassigned by Foxx to the general counsel position due to her race. Foxx's comment regarding the African-American employee's purported lack of articulation skills is not direct evidence of racial discrimination because it would require an inference that Foxx believed the lack of articulation skills were due to the employee's race. *See, e.g., Johnson*, 319 F.3d at 865 ("Contrary to Johnson's position, none of these instances compel the conclusion that Noyes's decision to discharge Johnson was motivated by racial animus. The concern that Johnson's presence would adversely effect the Wheelersburg store's business, for example, does not compel the conclusion that Newman sought to have Johnson removed from the position of comanager. Deriving this purported desire from Newman's comment requires the inferential step of concluding that because Newman held this belief, he would want to have Johnson's employment terminated. Similarly, the comments about Johnson's initiative and intelligence would support a finding of racial discrimination only if a factfinder were to infer that Newman and Noyes believed that Johnson lacked these traits because of his race. The need to draw such inferences prevents these remarks from constituting direct evidence of discrimination."). In addition, "[i]solated and ambiguous comments are insufficient to support a finding of direct discrimination." *White v. Columbus Metropolitan Housing Auth.*, 429 F.3d 232, 239 (6th Cir. 2005). Finally, plaintiff answered "[n]o, other than my opinion and the fact that it makes no sense" when asked at her deposition if she had "any factual information" that Foxx had told her he was reassigning her based on her race. Doc. 51, p. 179 ("Q. Do you have any factual information that Mr. Foxx told you what he did tell you on June 10, as to what you claim he said, was because of your race? A. No, other than my opinion and the fact that it makes no sense. No.").

Fed.Appx. at 853. To make her prima facie case, plaintiff "must establish that 1) she was a

member of a protected class; 2) she was subject to an adverse employment action; 3) she was

qualified for the job; and 4) for the same or similar conduct, she was treated differently from

similarly situated non-minority employees."[9] *Id.* These same elements are also applicable to

plaintiff's gender discrimination claim. *See, e.g., Wright*, 455 F.3d at 707, 709 (using same

elements for racial and gender discrimination claims). The plaintiff's burden to make a prima

facie case "is not onerous" and a district court errs by requiring a plaintiff to produce "a

significant amount of evidence" at the prima facie stage. *Jackson v. FedEx Corporate Services,

Inc.*, 518 F.3d 388, 396 (6th Cir. 2008).

 If a plaintiff establishes a prima facie case of discrimination, "the burden shifts to the

defendant to rebut the presumption of discrimination by providing evidence showing that the

plaintiff was terminated for a legitimate nondiscriminatory reason." *Smith v. Leggett Wire Co.*,

220 F.3d 752, 758-59 (6th Cir. 2000). To meet its burden, defendant "'must clearly set forth,

---

 [9]The Sixth Circuit alternately has held that the fourth element requires a plaintiff to show
that "he or she was replaced by someone outside the protected class or was treated differently
than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702,
707 (6th Cir. 2006). In at least one case, the Sixth Circuit tersely held that a discrimination claim
failed because the plaintiff had not shown that he was replaced by someone outside the protected
class. *Alexander v. Ohio State University College of Social Work*, 429 Fed.Appx. 481, 487 (6th
Cir. 2011) ("Alexander was replaced as BSSW Director by an African–American female
professor. He cannot establish a prima facie case of discrimination because he was not replaced
by someone outside the protected class.") (internal quotation marks omitted). In another case,
the Sixth Circuit expressly held that a plaintiff could make a prima facie case by either showing
that the plaintiff was replaced by someone outside the protected class or by "presenting credible,
direct evidence of discriminatory intent." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 n.4 (6th
Cir. 1992). Defendant stresses plaintiff was not replaced by someone outside her protected
class(es); plaintiff focuses on her allegedly having been treated differently than similarly situated
employees. The Court will discuss both methods by which a plaintiff may satisfy the fourth
element of a prima facie case.

through the introduction of admissible evidence, the reasons' for its decision." *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 703 (6th Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).  A defendant cannot meet its burden through argument of counsel or by relying on its answer.  *Clay*, 501 F.3d at 703-04.

If the defendant meets its burden, "the burden shifts back to the plaintiff to show that the reason put forth by the defendant is pretextual, which can be done by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."  *Id.* at 704 (internal quotation marks omitted).  In other words, plaintiff must "prove that the proffered reason [submitted by defendant] was actually a pretext to hide unlawful discrimination."  *Johnson*, 319 F.3d at 866 (quotation marks omitted).

### 2.  Prima Facie Case

There is no dispute that plaintiff is a member of a protected class and was qualified for her position.  The questions at issue are whether plaintiff suffered an adverse employment action, was replaced by someone outside her protected class or was treated differently than a similarly situated non-minority employee.

### a.  Adverse Employment Action

The Sixth Circuit has defined an adverse employment action as:

> a materially adverse change in the terms and conditions of [a plaintiff's] employment. A bruised ego or a mere inconvenience or an alteration of job responsibilities is not sufficient to constitute an adverse employment action. In addition, an adverse employment action is not characterized by dissatisfying an employee. . . .  Adverse employment actions typically involve a significant change in employment status, including hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

*Leavey v. City of Detroit*, 467 Fed.Appx. 420, 425 (6th Cir. 2012) (internal citations and quotation marks omitted).  "[R]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims[,]" *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996), but a "demotion evidenced by a decrease in wage or salary . . . [or] a less distinguished title . . . or significantly diminished material responsibilities might constitute an adverse employment action."  *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (quoting *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).  "When a reassignment rises to the level of a constructive discharge, however, the reassignment is an adverse employment action.  For a transfer or reassignment to amount to a constructive discharge, its conditions must be objectively intolerable to a reasonable person."  *Policastro v. Northwest Airlines*, *Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).  An employee's subjective view of whether an action constitutes an adverse employment action is not controlling; instead, the issue is determined by analyzing the evidence from the perspective of an objective, reasonable person.  *See, e.g., Blackburn v. Shelby County*, 770 F.Supp.2d 896, 919 (W.D.Tenn. 2011).

Defendant contends that plaintiff cannot show that she suffered an adverse employment action because changing from the VP of HR position to the general counsel position only changed plaintiff's job duties, not her salary or benefits.  However, the record contains evidence from which a reasonable person could construe the attempted reassignment as an adverse employment action.  At his deposition, Foxx testified that the reassignment would have been taken as a disciplinary matter.  *See* Doc. 58, p. 188-89 ("But in that particular situation, I had to make a decision, and so what I did is I gave a lot of thought to the question of how can I retain

Lisa [plaintiff] with the organization but, at the same time, make a public statement that this behavior is unacceptable because everybody knew about it.  And so, therefore, I, frankly, thought I was a genius to have come up with the idea of moving you [plaintiff] to the general counsel. . . . [B]ecause what it did is, it would move you to a position that allowed you to stay with the organization.  It sent a message to the organization that you–that this type of behavior is not acceptable, and at the same time, it took away the people that were reporting to you such that you wouldn't be a bad model for them . . . .").  The reassignment altered some of plaintiff's job duties as it took away her supervisory capacity.  *Id.*  Plaintiff testified in her deposition that Foxx had told her that he "was demoting me [plaintiff]. . . . He never used the word, 'reassigned.'" Doc. 52, p.245.

Based on his deposition testimony that the reassignment was attempted for disciplinary reasons, it is clear that Foxx viewed the general counsel position as being less prestigious or important than the VP of HR position.  Taking into account the unique facts of this case, a reasonable person could similarly conclude that–even though her salary remained the same–the attempted reassignment constitutes an adverse employment action.

### b.  Replacement By Someone Outside Protected Class

Foxx's affidavit avers that plaintiff "has not been replaced."  Doc. 53-1, p. 9.  Instead, "[m]ost of her duties and responsibilities were initially assumed by the two Human Resources Managers that reported to her, Patrice Barnes and Chavon Phillips, who both are African-American females."  *Id.*  Accordingly, defendant contends that "[b]ecause Plaintiff cannot prove that she was replaced by someone outside of the protected class, summary judgment should be granted to Defendant."  Doc. 53, p.22.  Plaintiff has not rebutted Foxx's assertion that two

12

African-American females assumed her duties.

"Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."  *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) (age discrimination case).  *Accord Novotny v. Elsevier*, 291 Fed.Appx. 698, 702 (6th Cir. 2008) (gender discrimination case).  Plaintiff, therefore, was not replaced.  Even if it were assumed, solely for the sake of argument, that plaintiff was replaced she still cannot satisfy the fourth element because her replacements were African-Americans.  *See, e.g., Alexander*, 429 Fed.Appx. at 487 ("Alexander was replaced . . . by an African–American female professor. He cannot establish a prima facie case of discrimination because he was not replaced by someone outside the protected class.") (internal quotation marks omitted).

### c.  Treated Differently Than Similarly Situated Employees

The Sixth Circuit has held that "to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the comparables are similarly-situated *in all respects*."  *Mitchell*, 964 F.2d at 583 (internal quotation marks omitted) (emphasis original).  To "be deemed similarly-situated, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (internal quotation marks omitted).  A plaintiff is not required to show an "exact correlation" with the comparator; instead a plaintiff must demonstrate "relevant similarity." *Singfield v. Akron Metropolitan Housing Auth.*, 389 F.3d 555, 562 (6th Cir. 2004). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two

13

employees are similarly situated." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004).  The

Sixth Circuit has cautioned that "[t]he purpose of Title VII and Section 1981 are not served by

an overly narrow application of the similarly situated standard." *Jackson*, 518 F.3d at 396.

Defendant contends that plaintiff cannot identify any similarly situated employees

because she "held the unique position of Vice-President of Human Resources" so "[t]here was

no other non-minority at d.e. Foxx & Associates who was similarly situated to Plaintiff in all

relevant respects." Doc. 53, p.23.  Plaintiff contends she was similarly situated to Moustapha

Salama,[10] who was defendant's director of engineering, and Melinda Lowe (who plaintiff

contends, without citation to the record, "also held a Director level position . . . .").  Doc. 67, p.

30.[11]  Plaintiff contends Foxx believed Salama "was falsifying his leave documents and engaging

in personal business on company time" but suffered no adverse employment action.  *Id.*

According to plaintiff, Lowe was directed to lay off someone in her department but instead

"hired the sister of a member of the customer's (the Procter and Gamble Company's)

management team" without notifying her superior.  *Id.*  Lowe was not disciplined.

At her deposition, plaintiff testified that Lowe had engaged in two instances of improper

conduct.  First, Lowe had had an inappropriate relationship with a client.  Doc. 52, p.340.  Next,

as plaintiff related, Lowe failed to layoff an individual and, instead, hired the sister of the person

with whom she had engaged in the inappropriate relationship to fill a position which was not

---

[10]Salama is Egyptian.  The parties do not assert that Salama's Egyptian heritage has any
tangible bearing on plaintiff's claims.

[11]During her deposition, plaintiff testified that Lowe was a regional manager.  Doc. 52, p.
340.  During his deposition, Foxx testified that Lowe formerly was a site manager and is now a
regional manager.  Doc. 58, p. 203.

approved.  *Id.* at 341.  Lowe was not terminated (in fact she was not disciplined at all) because of concerns over how the client would react if Lowe were terminated.  *Id.* at 342-43.  During his deposition, Foxx testified that he recalled "the edges" of Lowe's misconduct but did not recall the details.  Doc. 58, p. 202-204.  Foxx testified that Lowe was not written up or suspended but "Albany was taken away from her . . . ."  *Id.* at 211.

As for Salama, plaintiff testified at her deposition that Foxx had told her (plaintiff) that Salama "was running his own business on the side and spending more of his time doing whatever his other business was than working for Foxx . . . ."  Doc. 52, p. 344.  Salama was placed on a performance improvement plan but was not terminated.  *Id.* at 344-46.  During his deposition, Foxx testified that his "issue" with Salama was that Salama "will hop on–will tell you a day before he's getting ready to hop on a plane and go to Egypt and won't have handled the business that he needs to handle before he gets out of here."  Doc. 58, p. 204-05.  Foxx also testified that Salama lacked management skills, which led to high turnover in his department.  *Id.* at 207-09. However, Foxx testified that when Salama was there he "did a great job."  *Id.* at 206-07.  Salama was no longer employed by defendant because "[h]e [Salama] hopped on a plane, and we [defendant] sent him a notice of job abandonment."  *Id.* at 209.

Salama was not similarly situated to plaintiff because he did not engage in similar conduct.  Salama's misconduct involved taking leave without providing proper notice (for which he was ultimately sent a notification of job abandonment).  Salama did not direct a subordinate to violate company policy by splitting a purchase order, nor did Salama engage in a profane tirade in front of other employees.  Similarly, Lowe's misconduct did not involve asking a subordinate to violate company policy or engaging in a profane tirade in front of other

employees.  In addition, plaintiff has not shown that Lowe's position as a site manager was comparable in prestige, duties and authority to plaintiff's position.

Because plaintiff has not shown that she was treated differently than similarly situated employees outside her protected class, she has not made out a prima facie case of race discrimination.  Nevertheless, the Court will briefly discuss whether defendant has presented a legitimate, nondiscriminatory reason for its actions and whether plaintiff has shown that defendant's reasons are pretextual.

### 3.  Legitimate, Nondiscriminatory Reason

If the Court were to conclude that plaintiff had made out a prima facie case, defendant would still be entitled to summary judgment on plaintiff's race discrimination claim.  Once a plaintiff makes a prima facie case, defendant must "offer a legitimate, non-discriminatory reason for the adverse employment action at issue."  *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003).  Defendant's stated nondiscriminatory reasons for its actions are that plaintiff violated company policy by directing her subordinate to split invoices and by engaging in the aforementioned tirade(s).

Plaintiff admits violating the Company's spending policy.  *See* Doc. 67, p. 9 ("Plaintiff concedes that she violated company policy by splitting an invoice . . . .").  Violations of company policy are sufficiently legitimate, nondiscriminatory reasons for taking an adverse employment action.  *See, e.g., Novotny*, 291 Fed.Appx. at 704 ("It is undisputed that Defendants provided a legitimate business reason for Novotny's termination. For that matter, Novotny has admitted that she violated the company's expense policy.").  In addition, there is no dispute that plaintiff acted improperly by engaging in profanity-laced tirade(s) in front of other Company

employees.  Defendant, accordingly, has offered legitimate, nondiscriminatory reasons for its actions.

### 4. Pretext

Because defendant has offered legitimate, nondiscriminatory reasons for its actions plaintiff "must . . . demonstrate that the proffered reason was a pretext, and not the real reason for the employment decision."  *Jones v. St.Jude Medical S.C., Inc.*, 504 Fed.Appx. 473, 477 (6th Cir. 2012).  In other words, plaintiff must "introduce admissible evidence to show . . . that racial animus was the true motivation driving the employer's determination."  *Barnes v. United Parcel Service*, 366 F.Supp.2d 612, 616 (W.D.Tenn. 2005) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993)).  "[D]isputes about the interpretation of company policy do not typically create genuine issues of material fact regarding whether a company's stated reason for an adverse employment action is only a pretext designed to mask unlawful discrimination."  *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558-59 (6th Cir. 2009).  The Sixth Circuit has held that a plaintiff's "[c]onclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."  *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008).

To avoid summary judgment being granted to defendant, plaintiff "need only produce enough evidence . . . to rebut, but not disprove, the defendant's proffered rationale."  *Jones*, 504 Fed.Appx. at 477 (internal quotation marks and citations omitted).  A plaintiff may meet her burden by showing "one of the following: (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her] discharge, or (3) that they were *insufficient* to motivate discharge."  *Id.* (internal quotation marks and citation omitted) (emphasis

original).  If an employer "has an honest belief in its proffered nondiscriminatory reason, the employee cannot establish pretext simply because the reason is ultimately shown to be incorrect . . . .  An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made."  *Id.* (internal quotation marks and citations omitted).

Plaintiff does not attempt to show that the proffered reasons offered by defendant have no basis in fact.  Instead, she asserts that the invoice splitting and tirades either did not actually motivate defendant or were insufficient to warrant the adverse employment action.

Plaintiff has pointed to no non-African-American employees[12] who engaged in similar behavior but were not disciplined.  All that plaintiff has offered the Court is her conjecture and belief that she was discriminated against due to her race and that her violating Company policy should not have resulted in a transfer.  Accordingly, plaintiff has failed to show that the reasons given by defendant for attempting to reassign her to the general counsel position are pretextual.

### 5. Conclusion

---

[12]Plaintiff contends that Ric Powell, an African-American male who was employed as defendant's chief business development and marketing officer, was similarly situated to her and that he (Powell) was not disciplined for misconduct involving invoice splitting.  Powell's situation will be discussed in more detail in the Court's analysis of plaintiff's gender discrimination claims, but, briefly, plaintiff's argument fails because Powell, unlike plaintiff, did not direct an employee to split a purchase order.  Instead, Powell discovered that a subordinate, Natascha Hubert, had split an invoice.  Powell counseled Hubert and, unlike plaintiff, informed Foxx of the incident.  Even assuming, for purposes of plaintiff's race discrimination claim, that Powell is similarly situated to plaintiff, Powell's alleged misconduct is not similar to plaintiff's.  In addition, plaintiff's claim that the Company racially discriminates is harmed, not helped, by the fact that another African-American (Powell) did not suffer an adverse employment action for misconduct which plaintiff (mistakenly) argues is similar to hers.  Finally, though Hubert was not removed from her position, she is not a proper comparator because her position was not as prestigious and did not involve similar duties and responsibilities.

Plaintiff has not made out a prima facie case of race discrimination.  However, even if the Court were to conclude that plaintiff has made a prima facie case, plaintiff has not shown pretext.  Accordingly, defendant should be granted summary judgment on all of plaintiff's race discrimination claims.

### D.  Gender Discrimination Claims

#### 1.  Standard of Review

Plaintiff's complaint contains a count for gender discrimination under Title VII and a count for gender discrimination under Ohio law.  Doc. 1, p. 16-17.  As with her race discrimination claims, plaintiff may prove her Title VII gender discrimination claim "by direct or circumstantial evidence."  *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012).  Because plaintiff admittedly has not provided direct evidence of discrimination (i.e., evidence which, if believed would require a conclusion that discrimination was a motivating factor in defendant's actions, *id.* at 649),[13] the Court will analyze the gender discrimination claims using the same basic burden-shifting framework used to resolve plaintiff's race discrimination claims.

#### 2.  Prima Facie Case

"In order to establish a prima facie case of gender discrimination under Title VII, [plaintiff] must show that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently from similarly situated members of the unprotected class."  *Knox v. Neaton Auto Products Mfg.,*

---

[13]In her motion for partial summary judgment, plaintiff admits that she "relies on circumstantial evidence alone" for her gender discrimination claims.  Doc. 55, p. 16.

19

*Inc.*, 375 F.3d 451, 456-57 (6th Cir. 2004).[14]  The prima facie elements are "essentially the same" for claims made under Ohio state law.  *Id.* at 457.

### a.  Elements One, Two and Three

There is no question that plaintiff satisfies the first category.  For the reasons previously discussed, defendant's attempt to reassign plaintiff to the general counsel position can, at least for summary judgment purposes, be deemed an adverse employment action.  There is also no real argument regarding plaintiff's qualifications.  The question again therefore is whether plaintiff was treated differently than similarly situated members of the unprotected class (i.e., males).

### b.  Element Four--Similarly Situated Comparators

To reiterate, in order to be similarly situated a comparator "'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  *Novotny*, 291 Fed.Appx. at 703-04 (quoting *Mitchell*, 964 F.2d at 583)).  "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated."  *Leadbetter*, 385 F.3d at 691.  Plaintiff contends she was similarly situated to Powell and Jim Scott, the Company's former Chief Technology Officer.

_____

[14]Alternately, a plaintiff could prove the fourth element by showing that "she was replaced by someone outside the protected class . . . ."  *Id.* at 457.  As discussed previously, plaintiff's duties were assumed by two other female employees.  Plaintiff therefore was not replaced. *Novotny*, 291 Fed.Appx. at 702.  Moreover, even if the Court somehow concludes that plaintiff was replaced she cannot satisfy the fourth element of a prima facie case because her replacements were females.  *Alexander*, 429 Fed.Appx. at 487.

### i. Powell

Defendant asserts that Powell, who had years of experience in sales and marketing, had duties requiring him to oversee the sales and marketing team and to market and develop new business.  *See* Foxx affidavit ¶ 35-36 (Doc. 53-1, p.5).  Plaintiff had no sales or marketing experience and was not tasked with developing new business.  *Id.* at ¶37-38.  The job duties performed by plaintiff and Powell were, therefore, dissimilar.

In addition, Powell's conduct was different than plaintiff's.  Plaintiff admittedly violated company policy by ordering a subordinate to split an invoice to circumvent plaintiff's $1,000 independent spending authority.  Powell, on the other hand, oversaw an employee who improperly split an invoice.  Powell counseled the female employee[15] and, unlike plaintiff, reported the matter to Foxx.  Accordingly, even though Powell was at least tangentially involved in an incident of invoice splitting, Powell did not engage in conduct similar to plaintiff's.  In addition, Powell did not engage in profanity-filled tirades at the office.  Having considered all the relevant factors, the Court should conclude that Powell is not a proper comparator for plaintiff.

### ii. Scott

During plaintiff's last month of employment with the Company, Jim Scott, an African-American male, was hired as the Company's Chief Technology Officer.  The Chief Technology Officer was a new position with the Company and Scott's duties included leading the

---

[15]The fact that another female employee was not disciplined in the same manner as was plaintiff for splitting an invoice harms plaintiff's gender discrimination claim because if the Company discriminated against females logic would dictate that the other female employee would have received discipline akin to that received by plaintiff.

21

engineering group.  *See* Foxx's affidavit, ¶47.  The Chief Technology Officer position "required a background and experience in engineering" and required Scott to "lead the engineering team to find cost saving measures for customers through the use of technology."  Foxx's Supplemental Affidavit, ¶3,5 (Doc. 64-1, p.1).  Plaintiff, who did not have an engineering background, did not have responsibilities similar to Scott's.  *Id.* at ¶4, 6.  At her deposition plaintiff answered "[c]orrect" when asked if Scott's duties were different than hers (plaintiff's).  Doc. 51, p. 146.  In addition, there is no indication that Scott split invoices or had outbursts similar to plaintiff's. Scott, therefore, is not a proper comparator for plaintiff.

### 3.  Legitimate, Nondiscriminatory Reason

If the Court were to conclude that plaintiff had made out a prima facie case, defendant would still be entitled to summary judgment.  Once a plaintiff makes a prima facie case, defendant must "offer a legitimate, non-discriminatory reason for the adverse employment action at issue."  *Sutherland*, 344 F.3d at 615.  As discussed previously, defendant asserts that it sought to reassign plaintiff to the general counsel position based upon plaintiff's violation of company spending policy and verbal outbursts.  Those reasons are legitimate and nondiscriminatory.  *See, e.g., Novotny*, 291 Fed.Appx. at 704-06 (holding that employee's admitted and willful violation of company expense policy was legitimate, nondiscriminatory reason for terminating employee). The burden then shifts to plaintiff to demonstrate that those reasons were pretextual.

### 4.  Pretext

To show pretext, plaintiff can show "that the defendant's reason has no basis in fact, the reason did not actually motivate the adverse employment action, or the reason was insufficient to motivate the adverse employment action."  *Frizzell v. Southwest Motor Freight*, 154 F.3d 641,

647 (6th Cir. 1998).  There is no question that the proffered reasons did have a basis in fact (i.e., plaintiff did split an invoice and rant and rave at the office).  Instead, plaintiff attempts to show that the proffered reasons did not actually motivate the adverse employment action and/or were insufficient to motivate that action.  Toward that end, plaintiff stresses that she did not receive discipline in a manner equivalent to Powell or Hubert for similar conduct.

Plaintiff's argument fails for several reasons.  First, Hubert is not a proper comparator since she (Hubert) did not hold a position similar to that held by plaintiff, nor did Hubert engage in outbursts as did plaintiff.  Second, Hubert is a female and the fact that she was not disciplined undercuts plaintiff's argument that she (plaintiff) was disciplined due to her gender.  Third, Powell did not engage in the same conduct as did plaintiff.  The record shows that Powell approved an invoice which was improperly split by Hubert.  Unlike plaintiff, there is no indication that Powell directed Hubert, one of his employees, to split the invoice.  Indeed, unlike plaintiff, Powell reported Hubert's misconduct to Foxx.  Moreover, plaintiff has not shown that Powell engaged in ranting and raving.  Finally, there is no evidence, other than plaintiff's speculation, that the Company took any adverse action against plaintiff as a result of plaintiff's work attire.[16]

### 5.  Conclusion

---

[16]Plaintiff admits she was wearing a sleeveless shirt on the day Foxx's wife accused her (plaintiff) of not being dressed in accordance with the dress code.  Plaintiff's deposition (Doc. 51), p. 207 ("I wore a sleeveless business shirt on that date . . . .").  The Company's dress code prohibits men and women from wearing "[t]ank/halter/tube tops[.]" Doc. 51-1, p.28.  The fact that Foxx's wife accused plaintiff of being out of uniform, therefore, is not ridiculous as a sleeveless shirt can be similar to a tank top.  Moreover, Foxx testified that plaintiff's "behavior after the situation [i.e., cursing and ranting] about your dress code was really more of the issue." Foxx's deposition (Doc. 58), p. 256.

"[A] reason cannot be proved to be a 'pretext for *discrimination*' unless it is shown *both*

that the reason was false, *and* that discrimination was the real reason . . . ."  *St. Mary's Honor*

*Center*, 509 U.S. at 515 (emphasis original).  Plaintiff has failed to show either that the reasons

submitted by defendant were false or that discrimination was the real motivating force behind

defendant's actions.  Accordingly, defendant is entitled to summary judgment on all of plaintiff's

gender discrimination claims.

### E.  Equal Pay Act Claims

#### 1.  Elements of Claim

> The EPA [Equal Pay Act] prohibits employers from paying an employee at a rate
> less than that paid to an employee of the opposite sex for performing equal work.
> *See* 29 U.S.C. § 206(d)(1).  In order to establish a prima facie case of wage
> discrimination under the EPA, plaintiffs must show that an employer pays
> different wages to employees of opposite sexes for equal work on jobs the
> performance of which requires equal skill, effort, and responsibility, and which
> are performed under similar working conditions.

*Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (internal quotation marks and citations

omitted).  When determining whether a person is an appropriate comparator under the EPA, the

focus should be  "on actual job requirements and duties, rather than job classifications or titles."

*Id.* at 362.  The comparison at the prima facie stage is on "jobs and not the employees" so

"[f]actors like education and experience are considered as a defense to an employer's liability

rather than as a part of a plaintiff's prima facie case."  *Id.* at 363.  Wages under the EPA include

"all payments made to . . . an employee as remuneration for employment . . . whether called

wages, salary, profit sharing, expense account, monthly minimum, bonus . . . or some other

name."  29 C.F.R. §1620.10.

Compared jobs "need not be identical in order to be considered 'equal work' under the

EPA." *Principi*, 441 F.3d at 359. To determine if jobs are "substantially equal" a court must engage in an "overall comparison of the work, not its individual segments." *Id.* (internal quotation marks and citation omitted). Unlike Title VII claims, "proof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act." *Id.* at 360 (quotation marks and citation omitted). Claims under Ohio's state equivalent to the EPA are "subject to the same standards as are applied to claims under the federal statute." *Creech v. Ohio Cas. Ins. Co.*, 944 F.Supp. 1347, 1353 (S.D.Ohio 1996).

### 2. Prima Facie Case

Defendant contends plaintiff has not made a prima facie case because "the undisputed record evidence establishes that Plaintiff did not perform equal work as any other employee at d.e. Foxx & Associates." Doc. 53, p. 30. To support that conclusion, defendant relies on Foxx's assertion in his affidavit that plaintiff "filled a unique position" because "no other person employed by the Company . . . performed the duties Plaintiff performed or . . . performed substantially equal work that required equal skill, effort and responsibility as Plaintiff." Doc. 53-1, p. 4, ¶14. Plaintiff similarly testified at her deposition that no one else in the Company had "those same duties" she had performed. Plaintiff's deposition (Doc. 51), p. 136. Defendant posits that plaintiff's unquestionably unique duties means that the only theoretically possible comparator would be plaintiff's predecessor as director of human resources, a male who made less than half of plaintiff's salary (when plaintiff's first year bonus is included). *See, e.g., Conti v. American Axle and Mfg., Inc.*, 326 Fed.Appx. 900, 914 (6th Cir. 2009) ("An EPA plaintiff may meet her prima facie burden by demonstrating a wage differential between herself and her predecessor.").

In response, plaintiff contends she "was performing work equal to that performed by the Executive Team members who, like Plaintiff, managed one of the six shared services departments." Doc. 67, p.10. Specifically, plaintiff asserts that she performed substantially equal work to the work performed by Powell and Scott because "[l]ike Plaintiff, both Powell and Scott were responsible for managing one of Defendant's shared service organizations and supporting all its brands. Plaintiff, Powell and Scott all managed a team of employees, all had budget and other fiscal responsibility, and . . . all three were expected to impact Defendant's bottom line." Doc. 67, p. 11. According to plaintiff, about four months after plaintiff began working for defendant, Foxx secretly increased Powell's annual salary to $250,000 and Scott was hired on at roughly the same time for a salary of $220,000 per year.

The focus must be on the duties actually performed, not job titles which means that plaintiff's argument that she is similarly situated to all members of the Company's executive team simply because all members of that team had some supervisory and budgetary authority is inapposite. The Sixth Circuit has previously rejected a position similar to plaintiff's in *Clark v. Johnson & Higgins*, 181 F.3d 100 (unpublished) (6th Cir. 1999).

In *Clark*, the plaintiff attempted to show a violation of Title VII and the EPA by comparing herself to other executives because she and the executives had positions which generally required similar skills. *Id.* at *4. The Sixth Circuit rejected plaintiff's position, holding that

> Clark's arguments miss the mark. We note at the outset that what she was "capable" of doing has no bearing on our inquiry; the question is what she actually did. Second, the pertinent question under either Title VII or the Equal Pay Act is whether Clark's work was "substantially equal" to those with whom she compares herself, not "substantially similar." There is no question-that is, it is conceded by Clark-that Clark's duties consisted solely of claims management;

26

there is likewise no question that the people to whom she compares herself did no claims work, instead doing brokerage work exclusively. Although the parties have failed to provide us with an entirely clear description of the various components of the jobs in question, we find it readily apparent that, even if Clark's job and the jobs of her coworkers generally called for similar levels of "skill," "effort," and "responsibility," the job of administering claims is far different than the job of soliciting new business and brokering new and renewed insurance coverage for existing clients. While both tasks are important, and perhaps even essential to the firm's business, they are distinctly different; one is primarily revenue generating and the other, customer servicing. We conclude, therefore, that Clark has not made out a *prima facie* wage-discrimination claim under either Title VII or the Equal Pay Act.

*Id.*

It is undisputed that plaintiff had a unique position involving different duties than all other employees of the Company. *See* Plaintiff's deposition (Doc. 51), p. 136 ("No one else in the company had that–those same duties, no."); Foxx's affidavit (Doc. 53-1), ¶14 ("As the Vice-President of Human Resources, Plaintiff filled a unique position. There was no other person employed by the Company or its family of companies that was similarly-situated or who performed the duties Plaintiff performed or who performed substantially equal work that required equal skill, effort and responsibility as Plaintiff."). As previously discussed, Powell's duties involved marketing and developing new business; plaintiff had no such duties. Foxx's affidavit (Doc. 53-1), ¶35-37. Scott's duties "required him to lead the engineering team to find cost saving measures for customers through the use of technology"[;] plaintiff had no such duties. Foxx's first supplemental affidavit (Doc. 64-1), ¶5-6. Plaintiff was responsible for: "recruiting, hiring and training new employees[,] . . . drafting policies and enforcing existing policies such as the wardrobe policy[, and] ensuring compliance with employment and labor laws." Foxx's affidavit (Doc. 53-1), ¶16-18. There is no indication that Powell, Scott or any other employee was tasked with performing those duties. Plaintiff's actual duties, therefore,

27

were "far different" than Powell's or Scott's. *Clark*, 181 F.3d at *4.

Even if the Court, arguendo, accepted plaintiff's argument that her duties were substantially equal to all other members of the Company's executive team, plaintiff would not be able to show that she was paid less than male members of the Company's executive team. Plaintiff's salary was more than double that of her male predecessor. Plaintiff also was more highly compensated than Bill Bednarchik, a Caucasian male who served as the Company's chief financial officer,[17] and Rich Cleveland, also a Caucasian male, who served as a Vice-President of the Company. *Id.* at ¶31-32. In fact, plaintiff's total compensation "made her the fourth highest paid employee of Defendant" with her salary less than only Foxx's, and "the Chief Operating Officers of two of the Company's family of companies, Delores Young, who is an African-American female, and Levon Thompson, who is an African-American male." *Id.* at ¶27-28. Considering all the relevant facts and circumstances, plaintiff has not made a prima facie case under the EPA or Title VII regarding pay disparity.

### F. Retaliation Claims

Plaintiff's final claims are for retaliation under Title VII, the EPA and Ohio state law. "Title VII provides in pertinent part: 'It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

---

[17]When Bednarchik was terminated as chief financial officer in 2010 he was replaced by Wendy Wilson, a Caucasian female. Wilson's salary was $200,000 per year–well above Bednarchik's or plaintiff's respective salaries. Foxx's affidavit (Doc. 53-1) ¶43-45. The fact that plaintiff made more than Bednarchik and Wilson made more than plaintiff undercuts plaintiff's claim that the Company paid female employees less than comparable male employees.

hearing under this subchapter.' 42 U.S.C. § 2000e-3(a)." *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004). To demonstrate a prima facie case of retaliation under Title VII[18] a plaintiff must "prove by a preponderance of the evidence" that "1) plaintiff engaged in activity protected by Title VII; 2) plaintiff's exercise of his civil rights was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action."[19] *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997). A plaintiff's burden of proving a prima facie case of Title VII retaliation is not designed to be onerous, *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), but "[s]ummary judgment is proper where the plaintiff fails to present evidence sufficient to create a dispute of material fact with respect to an element of his retaliation claim." *Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002).

If a plaintiff makes a prima facie case of retaliation, "the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action." *Hout v. City of Mansfield*, 550 F.Supp.2d 701, 735 (N.D.Ohio 2008) (internal quotation marks and

---

[18]Retaliation claims under Ohio state law are analyzed under the same framework as Title VII retaliation claims. *See, e.g., McBroom v. Barnes & Noble Booksellers, Inc.*, 747 F.Supp.2d 906, 913 (N.D.Ohio 2010) ("For retaliation claims in Ohio, Federal law provides the applicable analysis for reviewing retaliation claims. As such, the same burden shifting analysis that governs the Court's consideration of retaliation claims under Title VII applies to retaliation claims under Ohio Rev. Code § 4112.") (internal quotation marks and citation omitted).

[19]The same four core requirements are required to establish a prima facie retaliation claim under the EPA. *See, e.g., Denman v. Youngstown State University*, 545 F.Supp.2d 671, 678 (N.D.Ohio 2008) ("To establish a prima facie case of retaliation under the EPA, a plaintiff must show: (1) that she engaged in protected activity; (2) that the defendants knew she exercised protected rights; (3) that as a result of her exercise of protected rights the defendants took employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and adverse employment action.").

citation omitted). If defendant meets that burden then the burden "shifts back to the Plaintiffs, requiring them to demonstrate by a preponderance of the evidence that the proffered reasons were a mere pretext for a retaliatory animus." *Id.*

Plaintiff contends in her complaint that she engaged in protected conduct "when she requested that she be paid at a level equal to that of her male counterparts performing substantially equal work." Doc. 1, p. 18. At her deposition, however, plaintiff admitted that she did not tell Foxx that she believed she was entitled to a raise because of her gender.[20] Plaintiff states that she generally told Foxx about there being "some issues in terms of the pay rates for females[,]" plaintiff's deposition (Doc. 52) at 316, but plaintiff has admitted that she did not specifically complain about her salary being unequal due to her gender. This Court has previously held that "[c]omplaining vaguely about not getting a raise, promotion, or bonus, absent an accompanying specific complaint of illegal discriminatory conduct, does not constitute protected activity." *Thomas v. Ohio Civil Rights Com'n*, 2006 WL 1697577, at *9 (S.D.Ohio June 20, 2006). Moreover, as plaintiff was in charge of human resources issues for the Company, her expressions of concern over defendant's purportedly discriminatory wage

---

[20]Plaintiff's deposition contained the following exchange:

Q. In that meeting with Mr. Foxx, it would be accurate to say that you never told him that you felt that you were entitled to a raise because of your gender, correct?
A. No.
Q. You didn't tell him that?
A. No.
Q. And you didn't tell him you felt that you were entitled to an increase in your compensation because of your race, did you?
A. No, I did not.
Q. Okay. And it would be accurate to say, in that meeting with Mr. Foxx, there was no mention by him or by you of race or gender, correct?
A. Correct.

Doc. 51, p. 165-66.

30

standards are insufficient to constitute her having engaged in protected activity.  *See, e.g.,*

*Robinson v. Wal-Mart Stores, Inc.*, 341 F.Supp. 759, 763 (W.D.Mich. 2004) (holding that for

FLSA-retaliation purposes "plaintiff's expressions of concern or discomfort or frustration over

her employer's wage and work hour reporting practices—even accepting her deposition

testimony as true—do not amount to the requisite adversarial assertion of statutory rights.

Plaintiff's expressions of concern, even if characterized as 'complaints,' were made in her

capacity as Personnel Training Coordinator. She appears to have been appropriately cautioning

her superiors about improprieties with an eye toward correcting them and minimizing the risk of

liability.").[21]  Because plaintiff did not engage in a protected activity, she has not made a prima

---

[21]*See also McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996) ("Here,
McKenzie never crossed the line from being an employee merely performing her job as
personnel director to an employee lodging a personal complaint about the wage and hour
practices of her employer and asserting a right adverse to the company. McKenzie did not
initiate a FLSA claim against the company on her own behalf or on behalf of anyone else.
Rather, in her capacity as personnel manager, she informed the company that it was at risk of
claims that might be instituted by others as a result of its alleged FLSA violations. In order to
engage in protected activity . . . the employee must step outside his or her role of representing
the company and either file (or threaten to file) an action adverse to the employer, actively assist
other employees in asserting FLSA rights, or otherwise engage in activities that reasonably
could be perceived as directed towards the assertion of rights protected by the FLSA. Here, McKenzie
did none of these things. Indeed, McKenzie testified that her job responsibilities included
participating in wage and hour issues. There is no evidence in the record to suggest that
McKenzie was asserting any rights under the FLSA or that she took any action adverse to the
company; rather, the record reflects that McKenzie's actions in connection with the overtime pay
issue were completely consistent with her duties as personnel director for the company to
evaluate wage and hour issues and to assist the company in complying with its obligations under
the FLSA. McKenzie therefore lacks an essential ingredient of a retaliation claim; that is, she did
not take a position adverse to her employer or assert any rights under the FLSA."). Though
*Robinson* and *McKenzie* deal with FLSA claims, their logic applies to plaintiff's retaliation
claims.  In addition, the Sixth Circuit has noted that many district courts in this circuit (as well as
other circuits which have addressed the issue) "have come to the conclusion that complaints
within the scope of one's job duties cannot be protected activity."  *Pettit v. Steppingstone,
Center for the Potentially Gifted*, 429 Fed.Appx. 524, 530, n.2 (6th Cir. 2011).

facie case of retaliation.

### III. Conclusion

For the foregoing reasons, it is **RECOMMENDED**:

1.  Plaintiff's claim for promissory estoppel (Doc. 1, Count X) should be **dismissed as having been voluntarily withdrawn**; and

2.  Defendants' motion for summary judgment [Doc. 53] should be **granted**; and

3.  Plaintiff's sealed motion for partial summary judgment [Doc. 55] should be **denied**.

This 24th day of July, 2013.                          s/ J. Gregory Wehrman
                                                                           J. Gregory Werhman
                                                                           United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**AT CINCINNATI**
**CIVIL ACTION NO. 11-261-HJW-JGW**

**LISA MAY EVANS**                                                       **PLAINTIFF**

**v.**

**D.E. FOXX & ASSOCIATES, INC.**                               **DEFENDANT**
                                        **NOTICE**

        Attached hereto is the Report and Recommendation of the Honorable J. Gregory
Wehrman, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may
serve and file specific, written objections to the proposed findings and recommendations **within
14 days** after being served with this Report and Recommendation.  Such objections shall specify
the portions of the Report objected to and shall be accompanied by a memorandum of law in
support of the objections.  A party may respond to another party's objections **within 14 days**
after being served with a copy thereof.  Failure to make objections in accordance with this
procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir.
1981); *Thomas v. Arn*, 474 U.S. 140 (1985).