**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**LISA MAY EVANS,**

                    **Plaintiff,**

**v.**                                                    **Case No. 1:11-cv-261-HJW**

**D.E. FOXX & ASSOCIATES, INC.,**

                    **Defendant**

**ORDER**

        **Pending are the parties' cross-motions for summary judgment (doc. nos. 53,
55). Defendant filed proposed findings of fact and conclusions of law, which
plaintiff has highlighted as true, false, or irrelevant (doc. nos. 65, 67-1). On July 24,
2013, the Magistrate Judge entered a Report and Recommendation ("R&R"),
recommending that defendant's motion be granted, and that plaintiff's motion be
denied (doc. no. 75). Plaintiff filed objections (doc. nos. 76, 77), and defendant
responded (doc. no. 81). Having fully considered the record, including the parties'
briefs and related filings, proposed findings, exhibits, and applicable authority, the
Court agrees with the Magistrate Judge's recommendations. The Court will
therefore <u>overrule</u> the objections, <u>grant</u> the defendant's motion, and <u>deny</u> the
plaintiff's motion, for the following reasons:**

        **I. Background**

        **The Magistrate Judge has already recited the facts of this case (doc. no. 75
at 1-5), and those facts are incorporated herein by reference. Any "disputed" facts
will be noted and discussed herein. To summarize, in February 2009, attorney Lisa**

1

May Evans ("plaintiff") approached CEO David Foxx of D.E. Foxx & Associates, Inc. ("defendant") about providing human resource consulting services or legal services to the company, whose Director of Human Resources ("HR") had recently died of a heart attack. Foxx expanded the former position to include additional duties and hired Evans as an at-will employee in a new position entitled "Vice-President of Human Resources" ("VP of HR"). Her total compensation was $150,000 annually, based on a salary of $125,000 with a guaranteed bonus of $25,000 after the first year.[1]

When hired, plaintiff was the fourth highest paid employee at the company (doc. no. 67-1 at ¶ 35). All four of these employees (including CEO Foxx and plaintiff) were African-American. Half were female (one Chief Operating Officer "COO" and plaintiff). When hired, plaintiff was paid more than the company's Chief Financial Officer ("CFO"), a white male, whose salary was $125,000 annually (Id. at ¶ 39). She was paid more than the company's other VP, Rich Cleveland, a white male, whose salary was $106,000 annually (doc. no. 67-1 at ¶ 50). Her salary was substantially higher than the $70,000 salary of the former Director of HR, a white male. It is undisputed that currently, all of the chief executives working for defendant and its family of companies are African-American (doc. no. 67-1, at ¶ 6).

As VP of HR, plaintiff was responsible for overseeing the HR department, recruiting and hiring new employees, enforcing company policies, and ensuring

---

[1] **Although plaintiff red-lines this as "disputed" (doc. no. 67-1 at ¶ 22), she acknowledges this salary offer (Evans Dep. at 87). Plaintiff does not dispute that "when she began her employment for defendant, her total compensation, at $150,000, made her the fourth highest paid employee of the Company" (¶ 35).**

2

compliance with employment and labor laws (doc. no. 67-1, ¶¶ 25-28). It is undisputed that defendant expected plaintiff "to set an example for the entire Company about what was acceptable and unacceptable behavior in the workplace" (doc. no. 67-1 at ¶ 29).

Plaintiff was not a model employee. Foxx indicates that plaintiff "made unilateral decisions and often employed a totalitarian approach to those she supervised" and that she "was not setting a good example for employee behavior" (doc. no. 53-1 at 7). He indicates that plaintiff "often had out of control emotional outbursts that would be laced with curse words in front of other employees that she supervised" (Id.). Plaintiff admits she would often "rant and rave" and vent her frustrations in her office when she was "having issues" (Evans Dep. at 215 "I rant and rave in my office all the time.").[2] Other employees heard plaintiff's cursing and ranting.[3]

Plaintiff also violated company spending policy in several ways. Instead of obtaining the company credit card from Tom Booher in the accounting

---

[2] Plaintiff does not dispute that she would "rant and rave" and "use curse words in front of other employees," but inconsistently red-lines as "disputed" the fact that she "often had emotional outbursts" (doc. no. 67-1 at ¶¶ 69-71). Such inconsistency creates no genuine dispute of material fact.

[3] Plaintiff red-lines as "disputed" the assertion that she did not set a "good example for employee behavior" (doc. no. 67-1 at ¶ 68). Given plaintiff's admitted cursing and ranting, her disagreement as to whether this set a "good example" does not create any genuine dispute of material fact. The United States Supreme Court has observed that courts must distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," i.e. disagreement as to legal implications of those facts. Beard v. Banks, 548 U.S. 521, 529-30 (2006).

department, plaintiff admittedly wrote down the credit card number and directed her secretary to use it on multiple occasions to purchase items without going through the accounting department to obtain the card (doc. no. 67-1 at ¶¶ 76-78; Evans Dep. at 253-54).[4] Plaintiff was authorized to make purchases up to $1,000 without getting approval from Foxx; purchases over that amount required his approval. Plaintiff was aware of this rule (Id. at 256), but circumvented it by directing her secretary Teresa Smith in February 2010 to split a $1,200 purchase into two separate purchase orders, in order to avoid getting Foxx's approval (Smith Affidavit at ¶ 13). Plaintiff admits doing this (doc. no. 67-1 at ¶¶ 81-82). Ms. Smith felt uncomfortable about the matter and advised her HR manager. Foxx subsequently learned that plaintiff had directed Ms. Smith to split the invoice in violation of company policy.

In 2010, Foxx hired a new employee (Derrick Powell) for his sales and marketing skills as part of the executive team. Powell thereafter secured a multi-million dollar contract with Proctor & Gamble for the company. His annual salary was increased to $250,000. Additionally, the company hired a new "Chief Technology Officer" (Jim Scott) at a salary of $220,000 annually.

In April of 2010, plaintiff demanded a raise (doc. no. 67-1 at ¶¶ 83-84). Her

---

4 Despite the affidavit of Ms. Smith indicating her knowledge of the company's credit card policy, plaintiff red-lines as "disputed" the assertion that the company had "a policy that, in order to use the credit card, every employee has to go to the Accounting Department and get the physical credit card from the Accounting Department" (doc. no. 67-1 at ¶ 75). The Magistrate Judge aptly noted that plaintiff's denial of such policy "appears to be a matter of semantics" as plaintiff admits that Foxx had instructed her that "if I needed the credit card, to ask Tom Booher for it" (Evans Dep. at 253).

4

request was denied. According to plaintiff, Foxx told her she was not "impacting" the company's "bottom line" in a manner that would justify a raise (doc. no. 56 at ¶ 5, citing Foxx Dep. at 145-149). It is undisputed that plaintiff did not mention race or gender discrimination when she asked for a raise (doc. no. 67-1 at ¶¶ 151-152).

On June 3, 2010, plaintiff wore a "sleeveless top" to a business meeting. The company had a written dress code policy which indicated that "tank/halter/tube tops" were unacceptable attire, but that "sleeveless business tops" were acceptable (doc. no. 51-1 at 28, policy). Foxx's wife, whose corporate office was in the same building, asked plaintiff after the meeting whether plaintiff was dressed in accordance with the dress policy (doc. no. 64 at 11, n.7). Plaintiff characterizes this as Foxx's wife "accusing her of being out of uniform" (doc. no. 76 at 12). Regardless, it is undisputed that plaintiff had an emotional outburst and was very angry (doc. no. 67-1 at ¶¶ 85-86; Evans Dep. at 212, 215 indicating she was "furious about it"). She admittedly went back to her office "cursing and ranting," which other employees heard (Id.; see also, doc. no. 58-1 at 95, Jamia Holloman indicating "I heard Lisa Evans in the HR break in an obviously agitated state due to the use of profanity. I immediately exited the training room and closed the door behind me.").

Later that month, Foxx met with plaintiff and told her he intended to reassign her to the position of "General Counsel." Plaintiff characterizes this as a "demotion," although defendant contends the reassignment involved no reduction in pay or benefits. Plaintiff informed Foxx in June 2010 that she would not accept

the position (doc. no. 67-1 at ¶¶ 96, 119). Defendant construed this as a resignation. It is undisputed that plaintiff was not "replaced" and that her duties were assumed by two HR managers, Patrice Barns and Chavon Phillips, both whom are African-American and female (Id. at ¶¶ 98-99, 125). Ms. Barns was thereafter promoted to the position of Director of HR.

On August 20, 2010, plaintiff filed a charge of discrimination with the EEOC, alleging that she "was paid less and received less favorable benefits that my male and Caucasian counterparts because of my race and gender" (doc. no. 1-1). She also claimed she was "constructively terminated from my job because of my gender and race, and as a form of retaliation for requesting that I be paid in parity with my male and Caucasian counterparts" (Id.). The EEOC issued a "notice of right to sue" to plaintiff on April 11, 2011 (Id. at 2).

On April 26, 2011, plaintiff filed a federal complaint against her former employer, alleging claims of gender and race discrimination in employment under federal and state law, as well as claims for violation of the Equal Pay Act and for retaliation. Plaintiff also alleged a promissory estoppel claim, which she has voluntarily withdrawn (doc. 67 at 1).

<u>II. Review of Objections</u>

With respect to the court's review of objections to a Magistrate Judge's Report and Recommendation, the Magistrate Judge Act, 28 U.S.C. § 631 et seq., provides for *de novo* review by the district court when a party timely files written objections. The objections must be <u>*specific*</u>; generalized objections that do not

6

"specify the issues of contention" are not sufficient to satisfy the requirement of specific objections. Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995); Howard v. Secretary of HHS, 932 F.2d 505, 508-09 (6th Cir. 1991); and see, e.g., Holl v. Potter, 2011 WL 4337038 (S.D.Ohio) (J. Weber) (observing that general objections "are not sufficient to preserve an issue for review and a general objection to the entirety of the Report is the same as no objection"), aff'd by 506 Fed.Appx. 428 (6th Cir. 2012).

III. Discussion

A. Objections to the Magistrate Judge's Proposed Findings of Fact

1. Plaintiff's First Objection

Under the heading of "Specific Objections," plaintiff captions her first objection as "Failure to consider relevant, probative facts and record evidence" (doc. no. 76 at 4). This objection to the Report and Recommendation consists only of two generalized paragraphs that cite no specific facts, no specific case law, and no specific evidence of record. Merely labeling an objection as "specific" does not make it so. Plaintiff vaguely assails the Magistrate Judge's entire statement of the facts but ignores her own obligation to point to specific evidence in order to withstand the defendant's motion for summary judgment. While the court construes the evidence and draws all reasonable inferences in favor of the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), such party "may not rest upon the mere allegations or denials of [her] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Id. at 248. Merely complaining generally that the Magistrate Judge

7

purportedly did not include unspecified facts in his proposed findings of fact is not sufficient to identify any specific issues in contention. This objection is overly general and not sufficient to preserve any issue for review.

### 2. Plaintiff's Second Objection

Next, plaintiff generally complains that "the Magistrate did not draw all reasonable inferences in favor of plaintiff, made credibility determinations, and weighed evidence" (doc. no. 76 at 5). She points to several "examples" where the Magistrate Judge allegedly did not draw reasonable inferences in her favor. The Court does not agree with plaintiff's interpretation.

Plaintiff points to a November 2009 email from Foxx to plaintiff. Foxx indicated that plaintiff was "doing great" and "fully meeting my expectations," but he also included some constructive criticism (doc. no. 55 at 24). He indicated that he expected plaintiff to work on the following three areas: "learning to collaborate . . . [g]etting organized . . . [and l]earning to delegate and not abdicate" (Id.). Foxx explained that she needed to be "able to respond or present on all the critical items to me when I ask, without having to check with your folks" (Id. emphasis in original). He indicated "these are the things at the top of my list for you." Plaintiff had apparently asked him about areas she needed to work on.

In the fact section of his R&R, the Magistrate Judge observed that "as is evident from the dose of criticism contained in the otherwise laudatory email, Foxx was not completely pleased with all of plaintiff's actions" (doc. no. 75 at 2). This is a fair assessment. The email, though positive overall, did include constructive

criticism indicating that plaintiff needed to "work on" some significant managerial skills. The fact that the email was not *entirely* positive (as plaintiff urges) is confirmed by the email itself, where Foxx further comments: "I know you will only hear the negative in this email." The Magistrate Judge was not required to ignore this. Defendant points out that the Magistrate Judge merely set forth "what was made clear in the text of email" (doc. no. 81 at 7). Moreover, the United States Supreme Court has explained that a court must draw reasonable inferences in favor of the nonmoving party only "to the extent supportable by the record." Scott v. Harris, 550 U.S. 372, 381 (2007) (emphasis in original). The record does not support plaintiff's argument. This objection lacks merit.[5]

As another "example," plaintiff objects that the Magistrate Judge "misconstrued evidence and/or made improper inferences" in concluding that plaintiff and the defendant's former Director of HR, Joseph Fink, "held the same positions" (doc. no. 76 at 5, citing doc. no. 75 at 2, R&R). The premise of plaintiff's objection (i.e. that the Magistrate Judge concluded they held the "same positions") is inaccurate. In the R&R, the Magistrate Judge indicated:

> Foxx and plaintiff initially discussed having plaintiff serve as both general counsel for the Company and being the Company's Vice-President (VP) of HR. Plaintiff's deposition (Doc. 51), p. 53. The company's

---

[5] To the extent plaintiff attempts to attach any significance to the fact that the November 2009 email does not mention her "ranting and raving," defendant points out that many of plaintiff's tirades occurred after the email, and that in any event, the email does indicate in diplomatic language that plaintiff needed to work on being "collaborative" (doc. no. 81 at 8, n.2). Foxx explained that plaintiff had been managing through "intimidation" (Foxx Dep. at 216-217).

> previous Director of HR, a Caucasian male, had recently passed away and Foxx was "looking to replace the General Counsel." Foxx affidavit (Doc. 53-1), §9.

(doc. no. 75 at 1-2). Plaintiff herself characterized their initial discussion this way (doc. no. 51-1 at 27, Evans Letter, indicating "I want to confirm my understanding of the role as you described it to me at our meeting. My understanding is that the position would involve dual responsibility as both General Counsel and Vice President of Human Resources."). Plaintiff acknowledges that the company's previous Director of HR was a white male who had recently passed away (Evans Dep. at 131).[6] The Magistrate Judge accurately quoted from Foxx's affidavit (doc. no. 53-1, Foxx Aff. at ¶ 11 "I was also looking to replace the General Counsel."). Plaintiff does not dispute that defendant was "looking to replace the General Counsel" (doc. no. 67-1 at ¶ 14).

Contrary to plaintiff's suggestion, the Magistrate Judge did not "misconstrue" this evidence or draw any "improper inferences" from it. The Magistrate Judge accurately set forth the facts, as reflected by the evidence of record. Although plaintiff admits she "replaced" the former Director of HR (Evans Dep. at 131), she emphasizes that she filled a new position that included additional duties. She therefore asserts that it was not the "same" position. Foxx agrees that plaintiff's position was different than Fink's (Foxx Aff. ¶ 14). Regardless, plaintiff's objection is that the Magistrate Judge "inferred" at page 2 of the R&R that the two

---

[6] Although plaintiff red-lines this fact as "disputed," she acknowledged at deposition that the company's previous Director of HR was a white male who had recently passed away (Evans Dep. at 13). Plaintiff's red-lining is inconsistent with her own testimony and creates no genuine dispute of material fact.

positions were the same. He did not. Defendant accurately points this out (doc. no. 81 at 8, fn. 3 "nowhere . . . does the Magistrate Judge makes such a finding"). Plaintiff's objection lacks merit.

Plaintiff also contends that the Magistrate Judge accepted "Foxx's deposition testimony that plaintiff's emotional outbursts were among the factors considered in his decision to terminate Plaintiff's employment," but allegedly did not "reference a single aspect of the evidence offered by Plaintiff that would compel the opposite conclusion" (doc. no. 76 at 6). Plaintiff fails to discuss what "evidence" purportedly would "compel the opposite conclusion." This objection is conclusory and undeveloped. To the extent plaintiff refers the Court to pages 6-7 in her brief in opposition to summary judgment, plaintiff may not merely "refer" the Court to prior arguments in lieu of making a "specific objection." Simply restating prior arguments does not amount to a "specific objection." See, e.g., Harris v. Morgan, 2012 WL 2505838 at *3 (N.D. Ohio) (an objection that merely "summarizes what has been presented before" is not a "specific objection"); Holl, 2011 WL 4337038 (same).

Moreover, the only "evidence" that plaintiff mentions in pages 6-7 of her prior brief is her own admission that she had been "ranting and raving" on a "regular basis" to such an extent that the company added sound-proofing material to her office ceiling so that her outbursts would not (in her words) "be an issue" (doc. no. 67 at 6-7, citing Evans Dep. at 163-64, 215). In such brief, plaintiff primarily argued that there was a "lack" of evidence that her admitted "ranting and

11

raving" was considered a "problem" by her employer. Plaintiff's objection that the Magistrate Judge allegedly did not "reference a single aspect of the evidence offered by Plaintiff that would compel the opposite conclusion" therefore makes little sense. In the R&R, the Magistrate Judge appropriately referred to evidence of record, such as Foxx's Affidavit, where Foxx indicated that plaintiff "often had out of control emotional outbursts that would be laced with curse words in front of other employees that she supervised" (doc. no. 75 at 2, citing Foxx Aff.). Plaintiff admits ranting, and other employees heard it. This objection lacks merit.

Plaintiff further objects in a single paragraph that, with respect to plaintiff's violations of company spending policy, the Magistrate Judge concluded that the "alleged misconduct occurred" but "failed to consider probative evidence presented by [p]laintiff" (doc. no. 76 at 6-7). The Magistrate Judge could properly conclude that the misconduct "occurred" for the simple reason that plaintiff admitted such misconduct (Evans Dep. at 253-254, 264). Plaintiff points to no probative evidence that the Magistrate Judge "failed to consider." Plaintiff's generalized objection is conclusory and without merit.

### 3. Plaintiff's Third Objection

Plaintiff's next objection suffers from similar defects. Plaintiff contends in a generalized two-paragraph objection that the Magistrate Judge allegedly "ignored inconsistencies in Foxx's testimony that could have served to undermine his credibility in general. . ." (doc. no. 76 at 7). Plaintiff merely refers the Court to "Pretext Section, pp. 6-12" without identifying what document she is referring to.

The Court observes that the R&R does *not* discuss pretext at pages 6-12; the R&R discusses pretext at pages 17-18, 22-23. Plaintiff's reference to "pages 6-12" of an unidentified document also does not correspond to any pretext section in plaintiff's brief in opposition (doc. no. 67) or her motion for summary judgment (doc. no. 55). In any event, the Court again emphasizes that simply referring the Court to prior arguments does not amount to a "specific objection." To the extent plaintiff asserts in conclusory fashion that due to alleged inconsistencies in Foxx's testimony, the "entire case should have been submitted to a jury," plaintiff fails to identify what purported inconsistencies the Magistrate Judge allegedly "ignored." She does not cite to any specific evidence of record. This objection is general, conclusory, and without merit.

### B. Objections to the Magistrate Judge's Proposed Conclusions of Law

Plaintiff generally describes her remaining objections as "Objections to Legal Standards Applied in Analyzing Plaintiff's Claims" (doc. no. 76 at 8). Despite the caption, plaintiff does not dispute the applicable legal standard. Moreover, the Magistrate Judge correctly set forth the standard for summary judgment (doc. no. 75 at 5-7). He correctly pointed out that the standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991) ("the court must evaluate each party's motion on its own merits"). The Magistrate Judge correctly set forth the applicable law regarding direct or indirect evidence, including the evidentiary burden-shifting framework for

13

claims based on indirect evidence. For the most part, plaintiff does not dispute the applicable law (doc. no. 67-1 at ¶¶ 103-106).[7] Plaintiff's objections under this heading pertain to the Magistrate Judge's analysis of the facts under the applicable legal standard.

### 1. Plaintiff's Objection Regarding Foxx's Alleged Comments

In the R&R, the Magistrate Judge discussed plaintiff's deposition testimony that Foxx had allegedly made several racially-oriented comments (doc. no. 75 at 8, fn. 8). Foxx's alleged comments, even assuming he actually made them, and putting admissibility issues aside, did not pertain to plaintiff or her reassignment. The Magistrate Judge correctly pointed out that those comments, such as Foxx's alleged reference to a regional manager's "lack of articulation," would require inferences, and thus, were not "direct evidence" of any discriminatory motivation for plaintiff's reassignment or alleged pay disparity. Plaintiff does not appear to challenge this determination, but complains in conclusory fashion that the Magistrate Judge "failed to consider" these comments when analyzing plaintiff's circumstantial case (doc. no. 76 at 8). As the Magistrate Judge expressly discussed the nature and substance of the alleged comments, the record refutes plaintiff's suggestion that the Magistrate Judge "failed to consider" them.

---

7 **Inexplicably, plaintiff red-lines as "disputed" the well-settled proposition that "a reason cannot be a pretext for discrimination unless it is shown that the reason is both false and that discrimination was the real reason" (doc. no. 67-1 at ¶ 107). See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993) ("A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.").**

Defendant points out that the Magistrate Judge appropriately reviewed all the evidence under the <u>McDonnel Douglas</u> burden-shifting framework and found that plaintiff had failed to make out a prima facie case of race discrimination (doc. no. 81 at 10-11). Such evidence would include plaintiff's own admission at deposition that she had "no factual information" that Foxx reassigned her due to race (<u>Id</u>. at 14, citing Evans Dep. at 179).

## 2. Plaintiff's Objection to Magistrate Judge's Analysis of "Similarly Situated" Employees

Next, plaintiff vaguely contends that "in concluding plaintiff is not similarly situated to the comparators named in support of either her race or gender discrimination claims, the Magistrate Judge failed to view the evidence in the light most favorable" to plaintiff and made "improper credibility determinations" (doc. no. 76 at 8). Plaintiff cites no specific evidence or analysis, nor does she explain *how* the Magistrate Judge purportedly made any "improper credibility determinations" or failed to view any particular evidence in the light most favorable to plaintiff. Plaintiff merely asserts in conclusory fashion that "questions of fact" should have been left for a jury to decide, without pointing to any specific error in the Magistrate Judge's analysis.

Defendant points out that the Magistrate Judge appropriately considered the undisputed evidence for each of plaintiff's alleged comparators, including their job titles, duties, responsibilities, and alleged conduct, and then compared this evidence to the plaintiff's job titles, duties, responsibilities, and alleged conduct

15

(doc. no. 81 at 12, citing to the R&R's analysis of five alleged comparators: Lowe, Salama, Powell, Scott, and Hubert, at doc. no. 75 at 14-16 and 21-22). The Magistrate Judge recommended that, even viewing the evidence in the light most favorable to plaintiff, none of them had engaged in the same conduct as plaintiff (i.e. loudly "ranting and raving" and directing an employee to violate spending policy) and thus, were not "similarly situated" to plaintiff (doc. no. 75 at 16, 22).[8] The Magistrate Judge distinguished the actions of Mr. Powell, whose subordinate had split an invoice without his knowledge, as opposed to directing the employee to do so (as plaintiff admittedly did). When Mr. Powell found out, he disciplined the employee and reported it to Foxx, which plaintiff did not do (Id. at 18). As the defendant observes, "plaintiff does not claim that any of her alleged comparators engaged in the same of even similar conduct" (doc. no. 81 at 13). Plaintiff's objection to the Magistrate Judge's analysis of similarly-situated employees is general, conclusory, and meritless.

### 3. Plaintiff's Objection to Magistrate Judge's Analysis of Pretext

Next, plaintiff complains that the Magistrate Judge found that her remaining "evidence" consisted of mere speculation and conjecture (doc. no. 76 at 9). Plaintiff repeats her conclusory allegation that "questions of fact" should have been left for a jury to decide (Id. at 10). Plaintiff then claims that the Magistrate Judge "ignored compelling circumstantial evidence" of pretext (Id.).[9] This

---

[8] Defendant points out that plaintiff has taken contradictory positions throughout her brief with respect to her race and gender claims (doc. no. 81 at 11, fn. 6).
[9] Defendant correctly notes that the Magistrate Judge found that plaintiff did not

objection lacks merit.

As "compelling evidence" of pretext, plaintiff contends that defendant had "shifting explanations" for her pay disparity and reassignment, there were "rumors" that plaintiff was dressing provocatively to gain Foxx's attention, Foxx gave her "no notice" that he was concerned about her "ranting and raving" and violations of company spending policy, Foxx purportedly "refused to tell plaintiff what she had done" to deserve a "demotion," and that he waited four months to reassign her after she violated company spending policy by splitting the invoice (Id. at 10-15).

None of this is "compelling evidence" of pretext. More to the point, even assuming a prima facie case, plaintiff has not pointed to admissible evidence that would allow a jury to reasonably conclude that the company's "legitimate business reasons" for her reassignment (or for any alleged pay disparity with the top few earners) were merely a pretext for discrimination. The record contradicts plaintiff's allegation of "shifting explanations." Foxx's stated reasons for plaintiff's reassignment have remained consistent (see doc. no. 76 at 22, defendant's EEOC statement, citing plaintiff's violations of spending policy, her non-collaborative "dictatorial" managerial style, and her outburst of profanity and other inappropriate behavior in response to Mrs. Foxx's query about her attire under the dress code, i.e. plaintiff "stomped around the office" and was "using profanity and

---

make out a prima facie case of discrimination and did not need to proceed with further analysis. The Magistrate Judge addressed pretext as a matter of thoroughness. Having failed to present a prima facie case, plaintiff's objections regarding the analysis of pretext are of little consequence.

slamming doors"). Defendant also points out that Foxx has consistently explained that Mr. Powell was given a pay increase after he secured a multi-million dollar contract and that Foxx did not want him to leave the company "while that process was going on" (doc. no. 81 at 16, citing Foxx Dep. at 224-25).

As for plaintiff's suggestion that there were "rumors" that plaintiff was dressing provocatively to gain Foxx's attention, the Magistrate Judge correctly noted that plaintiff had put forth only "conjecture and belief" (doc. no. 75 at 18), which is insufficient to withstand summary judgment. Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, plaintiff cannot rely on conjecture or conclusory allegations"); Travelodge Hotels, Inc. v. Govan, 155 Fed.Appx. 235, 237 (6th Cir. 2005) (holding that briefs "filled with conclusory allegations ... failed to present sufficient evidence" to withstand summary judgment). Plaintiff acknowledges this point of law (doc. no. 67-1 at ¶ 108). Defendant aptly points out that plaintiff admitted at deposition that she had no facts to prove her race or gender claims (doc. no. 81 at 14, citing Evans Dep. at 179). Defendant points out that Foxx indicates he does not even know if plaintiff was violating the dress code and that it was her inappropriate behavior that concerned him (Id. at 17, citing Foxx Dep. at 256). Plaintiff's suggestion that Mrs. Foxx may have been "jealous" of her and that this may have motivated her reassignment is nothing but speculation. Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 724 (6th Cir. 2006) ("conjecture and speculation are insufficient to support an inference of discrimination"); Carson v.

18

**Patterson Companies, Inc.**, 423 Fed.Appx. 510, 514 (6th Cir. 2011) ("gut feeling" alone will not suffice to "go to the jury" on pretext).

To the extent plaintiff complains that Foxx did not give her "notice" in the November 2009 email that he was concerned about her "ranting and raving" or her violations of company spending policy, defendant points out that the splitting of the invoice occurred in February 2010 (and Foxx learned of it even later after the information had been forwarded through at least three layers of management) and that plaintiff's angry outburst in response to Mrs. Foxx's query occurred on June 3, 2010 (doc. no. 81 at 17-18). As already discussed, the November 2009 email **did** indicate (albeit in diplomatic language) that plaintiff had various issues she needed to work on, including a more "collaborative" managerial style. The record does not reflect any "delay" that would suggest pretext. Within a week of her inappropriate outburst, Foxx told her she was being reassigned. As for plaintiff's splitting of the invoice, defendant indicates that Foxx had recently learned of this and indicates he was pondering what action to take when plaintiff behaved badly in front of other employees on June 3, 2010 (doc. no. 81 at 20). Foxx told plaintiff her values were not in line with the company's values. Given her admitted misbehavior, and given that she was responsible as VP of HR for enforcing company policy and setting an appropriate "example," plaintiff should need no further explanation for her removal from her HR position.

Plaintiff cites **Mulvin v. City of Sandusky**, 320 F. Supp. 2d  627 (N.D. Ohio 2004) in support of her contention that she should have been expressly told that

her use of profanity, angry outbursts, and spending policy violations were the reason for her reassignment (doc. no. 76 at 14). The facts of that non-binding case are readily distinguishable. As defendant notes (doc. no. 81 at 14, fn. 9), Mulvin was terminated after reporting his supervisor for harassing another employee. Mulvin disputed the stated reason for his termination, whereas plaintiff admits to "ranting and raving" and violating company spending policy. Plaintiff's oddly-phrased contention in her objection that she had "mitigating" circumstances for violating company policy and not asking Foxx for permission to exceed her spending limit (i.e. he was out of town and she was spending the money "for the company") is belied by her own testimony indicating that she routinely spoke with him several times daily. Plaintiff never advised Foxx that she had exceeded her spending limit without permission. In short, the Magistrate Judge recommended that plaintiff had not shown any pretext. Plaintiff's objection to the Magistrate Judge's analysis lacks merit.

### 4. Plaintiff's Objection that the Magistrate Judge Applied an Incorrect Legal Standard to Plaintiff's Claim Under the Equal Pay Act

Next, plaintiff makes a generalized two-paragraph objection that the Magistrate Judge applied an "incorrect legal standard" to the prima facie analysis for this claim. On the contrary, the Magistrate Judge correctly indicated that the Equal Pay Act ("EPA") requires a plaintiff to show that "an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed

20

under similar working conditions" (doc. no. 75 at 25, citing 29 U.S.C. § 2061(d)(1)). The Magistrate Judge accurately quoted the statue. He also cited binding precedent that in determining whether jobs are "substantially equal," a court must engage in an "overall comparison of the work" (Id., citing <u>Beck-Wilson v. Principi</u> 441 F.3d 353, 359 (6th Cir. 2006) (holding that in determining whether a comparator is appropriate, the focus is on actual job requirements and duties, rather than job titles)). This is the same case that plaintiff generally cites (without identifying any particular page number). The Magistrate Judge did not apply an "incorrect legal standard." Plaintiff's generalized objection lacks merit.

<u>5. Plaintiff's Objection that the Magistrate Judge Made No Finding for Plaintiff's Title VII and Ohio R.C. 4112 Wage Discrimination Claims</u>

Next, plaintiff makes a conclusory two-sentence objection that the Magistrate Judge purportedly did not "analyze" the wage discrimination claims under Ohio law or Title VII (doc. 76 at 16-17). The record reflects otherwise. Specifically, the Magistrate Judge indicated that wage discrimination claims under the Equal Pay Act and Ohio law use the same analysis (doc. no. 75 at 25). The Magistrate Judge then quoted and relied on case law that discussed wage discrimination claims under both the EPA and Title VII (Id. at 27). After a lengthy discussion of the relevant facts, the Magistrate Judge concluded that "plaintiff has not made a prima facie case under the EPA or Title VII regarding pay disparity" (Id. at 28). Defendant points out that the analysis under the respective statutes is essentially the same (doc. no. 81 at 23, citing <u>Korte v. Diemer</u>, 909 F.2d 954, 957

21

(6th Cir. 1990) (quoting Odomes v. Nucare, 653 F.2d 246 (6th Cir. 1981) ("the analysis of a claim of unequal pay for equal work is essentially the same under the EPA or Title VII")). Plaintiffs objection lacks merit.

### 6. Plaintiff's Objection Regarding Equal Pay Claim

Finally, plaintiff objects that the Magistrate Judge's "findings with respect to Plaintiff's compensation set forth in his analysis of her state and federal Equal Pay Act ("EPA") claims are inconsistent with undisputed record evidence" (doc. no. 77 "addendum"). Plaintiff first rehashes her argument that her job as VP of HR was different than the former job of Director of HR. The Magistrate Judge expressly recognized this. He observed that both Foxx and plaintiff agreed that plaintiff "filled a unique position" and that no one else at the company had "those same duties." Such finding is not "inconsistent" with any "undisputed record evidence." Defendant points out that the Magistrate Judge found that plaintiff did not perform equal or substantially equal work as any other employee (doc. no. 81 at 24).

Defendant observes that the Magistrate Judge then "went above and beyond what was required and pointed out correctly that several male members of the 'executive team' were actually paid less than plaintiff and less than other females at the company" (Id.). The Magistrate Judge accurately noted that Rich Cleveland (white male) was a Vice-President and was paid less than plaintiff. Again, this is not "inconsistent with undisputed record evidence."

The Magistrate Judge considered plaintiff's argument that she was performing work "equal to" that performed by other later-hired executive team

22

members (such as Powell and Scott) because they managed a shared services organization and had some budget and supervisory authority (doc. no. 75 at 26). The Magistrate Judge observed that plaintiff was responsible for HR functions, such as recruiting and hiring new employees, enforcing existing company policies, and ensuring compliance with employment and labor laws, whereas Powel's primary duties involved sales and marketing, i.e. were revenue-generating (Id. at 27). The Magistrate Judge further pointed out that plaintiff was more highly compensated than the company's CFO (Bednarchik), Vice-President (Cleveland), and former Director of HR (Fink), all of whom were white males.

Defendant points out that when attempting to prove inequality in pay, "a plaintiff may not ignore lower-earning employees of the opposite sex" (doc. no. 81 at 24, citing Ambrose v. Summit Polymers, Inc., 172 Fed. Appx. 103 (6th Cir. 2006) ("a plaintiff cannot establish a prima facie case by showing only that the highest-earning employees of the opposite sex were paid more"). That is precisely what plaintiff has attempted to do. Defendant points out that plaintiff cannot "cherry-pick" only a few highly paid employees for comparison. The Magistrate Judge appropriately analyzed plaintiff's wage disparity claims. Plaintiff objection is without merit.

## IV. Conclusion

Upon a de novo review of the record, especially in light of plaintiff's objections, the Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of

this case. The Court agrees with the Magistrate Judge's recommendations and hereby adopts and incorporates by reference herein, the Report and Recommendation of the United States Magistrate Judge (doc. no. 75).

## V. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have extensively briefed the relevant issues. The Court finds that oral argument is not warranted. Himes v. U.S., 645 F.3d 771, 783-84 (6th Cir. 2011); Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs, 975 F.2d 300, 301-02 (6th Cir. 1992); Schentur v. U.S., 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the Court OVERRULES the plaintiff's "Objections" (doc. no. 76); GRANTS the defendant's "Motion for Summary Judgment" (doc. no. 53); and DENIES the plaintiff's "Motion for Summary Judgment" (doc. no. 55). This case is DISMISSED and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

_____ s/Herman J. Weber _____
Herman J. Weber, Senior Judge
United States District Court

24